# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERRI L. ECKARD, | ) | 1:11cv0516 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Terri L. Eckard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on April 25, 2006, alleging disability since June 19, 1998, due to back problems, severe headaches, memory problems and ADHD. AR 113-119, 125-132. After her application was denied initially and on reconsideration, Plaintiff requested a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

before an Administrative Law Judge ("ALJ").  AR 61-70, 71-79, 93.  ALJ Christopher Larsen held a hearing on August 26, 2008, and issued a decision denying benefits on October 24, 2008. AR 26-60, 16-25.

On December 14, 2010, the Appeals Council granted Plaintiff's request for review.  It issued a decision on January 28, 2011, finding Plaintiff not disabled.

<u>Hearing Testimony</u>

ALJ Larsen held a hearing on August 26, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Dennis Bromberg.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 26.

Plaintiff testified that she was born in 1960.  AR 32.  Plaintiff graduated high school but was unable to complete a secretarial jobs course because it was too confusing.  AR 33.  She last worked in 2004 at Wal-Mart restocking shelves in the beauty department.  AR 33.  Plaintiff was fired after a few months because she missed too many days due to pain and was too slow.  AR 35.

Plaintiff has back pain that radiates into both legs, and prolonged walking and sitting make it worse. AR 37-38. Medications help a little.  Plaintiff was taking Norco, Tramadol and sleeping pills. AR 38.  Plaintiff has been using a prescribed walker since 1999 or 2000.  AR 40. She used the walker about 60 percent of the time and used a cane the rest of the time.  AR 41.

Plaintiff also has migraines almost every day that cause vomiting, sensitivity to light and severe pain.  AR 44.  Plaintiff takes Adderall for ADHD and thought that it helped a little bit. She thought that she could concentrate for about 30 minutes.  AR 45.  Plaintiff has panic attacks and frequently thinks about suicide.  AR 46.  Her medications make it difficult for her to wake up in the morning.  AR 47.

Plaintiff lives alone but has friends come over and help with chores.  AR 48.  She sleeps a lot during the day if she is in pain and maybe watches some television.  AR 48.  Plaintiff goes to church three times a month and sometimes goes on a quick trip to the store with friends.  AR 48.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person can perform work at the light level of exertion, with occasional climbing, stooping, kneeling, crouching or crawling and frequent balancing. This person could understand, remember and carry out simple one or two step job instructions and could only tolerate limited contact with the general public. The VE testified that this person could perform Plaintiff's past work at Wal-Mart, as performed. AR 53-54

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 10 pounds occasionally and frequently, stand and walk a total of two to four hours and sit for six hours. This person would need a sit/stand option. This person could not repetitively stoop, crouch or crawl and could understand, remember and carry out simple one or two step job instructions. The VE testified that this person could not perform Plaintiff's past work but could perform the positions of ampule sealer and loader of semi-conductor dyes. The VE explained that the number of positions available would be reduced by two-thirds because of the sit/stand option. Based on his experience, the VE identified 650 ampule sealer positions in California and 150 loader of semi-conductor dies positions in California. Nationally, 6,500 ampule sealer positions and 1,500 loader of semi-conductor dies positions would be available. AR 54-55.

If this person could only stand or walk with a cane or walker, she could not perform work. AR 56.

If this person could not complete an eight hour work day without interruption from psychologically-based symptoms, this person could not work. AR 56.

Plaintiff's attorney asked the VE to assume a person who could lift and carry 10 pounds occasionally and frequently, stand and walk for two to four hours and sit for six hours. This person would need frequent rest periods while standing and walking and frequent changes in position, would have difficulty walking long distances and could not perform repetitive stooping, crouching and crawling. The VE testified that this person could not work. AR 56-58.

The ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the VE indicated that it was, except where indicated. AR 58.

///

Medical Record

Plaintiff raises only legal issues in this appeal. Accordingly, the medical record is not relevant and will not be summarized.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified, and lumbar degenerative disc disease. AR 21. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, sit, or stand and walk for a total of six hours, occasionally climb, stoop, kneel, crouch or crawl and frequently balance. She could understand, remember and carry out simple one or two step job instructions and could only tolerate limited contact with the general public. AR 22. With this RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a stocker. AR 24.

Appeals Council Decision

The Appeals Council adopted the ALJ's findings that Plaintiff had not engaged in substantial gainful activity since June 19, 1998, and had severe impairments that do not meet or equal a listed impairment. The Appeals Council also agreed with the ALJ's RFC assessment and credibility determination. AR 7-8.

At step four, however, the Appeals Council did not agree with the ALJ's finding that Plaintiff could perform her past relevant work. Specifically, the Appeals Council determined that Plaintiff's past work as a stocker did not constitute substantial gainful activity. AR 8. Based on Plaintiff's RFC and the VE testimony, the Appeals Council found that Plaintiff could perform the sedentary, unskilled positions of ampoule sealer and loader of semi-conductor dies. The Appeals Council concluded that Plaintiff was not disabled at any time through October 24, 2008, the date of the ALJ's decision. AR 9-10.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial

evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g). Applying the process in this case, the Appeals Council found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified, and

lumbar degenerative disc disease) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy.  AR 7-10.

Here, Plaintiff argues that (1) the ALJ erred at step five by failing to demonstrate that she could perform a significant number of jobs: (2) the Appeals Council abused its discretion by refusing to adjudicate disability through the date of its decision; and (3) the VE's testimony was not consistent with the DOT.

## **DISCUSSION**

A.   Significant Number of Jobs

Plaintiff contends that the Appeals Council failed to make an adequate showing that a significant number of jobs exist in the region in which she lives, or in several regions of the country.  She argues that the State of California is not a "region" under the regulations and contends that the VE should have used the "Metropolitan Statistical Area" to determine the appropriate region.  Opening Brief, at 7.

At step five of the sequential evaluation process, the Commissioner bears the burden of demonstrating that Plaintiff can perform "other work" that exists in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).  Pursuant to the regulations, work exists in the national economy "regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be fired if he applied for work."  42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1566(b), 416.966(b).  The regulations further explain that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."  20 C.F.R. §§ 404.1566(b), 416.966(b).

As a threshold matter, the Appeals Council did not clearly set forth the number of positions it found to be significant.  In response to the hypothetical ultimately adopted by the ALJ, the VE testified that Plaintiff could return to her past work.  Based on this response, the

ALJ did not ask for alternate work.  When the Appeals Council determined that Plaintiff did not have past relevant work, it made a step five finding based on a "more restrictive supplemental hypothetical question."  AR 8.  In response to this more restrictive hypothetical (which also lacked certain limitations found in the RFC), the ALJ offered the positions of ampoule sealer, which has 650 jobs available in California and 6,500 jobs available nationally, and loader of semi-conductor dies, which has 150 jobs available in California and 1,500 jobs available nationally.  AR 55.

The Appeals Council did not specify these numbers, however.  Instead, the Appeals Council manipulated the hypothetical and relied on its own reading of the DOT.  The Appeals Council concluded that "review of the vocational expert's testimony and the DOT shows that these jobs exist in significant numbers in the national economy."  AR 9.

It therefore appears unclear whether the Appeals Council adopted the numbers given by the VE.  Nonetheless, the Court will analyze these numbers as the numbers are all that is offered in support of the step five finding.  The Appeals Council therefore determined that 800 jobs in California and 8,000 jobs nationwide constituted a significant number of jobs.

The Court need not discuss Plaintiff's suggested definition of "region" to determine that the numbers at issue are insignificant.[2]  Neither 800 jobs in the State of California, nor 8,000 nationwide, constitute a significant number of jobs as a matter of law.

The Ninth Circuit has never clearly established the minimum number of jobs necessary to constitute a "significant number" of jobs within the meaning of step five.  *Barker v. Sec'y Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir.1989).  Nonetheless, the numbers offered by the Appeals Council fall below the majority of cases where the numbers have been found significant.  Moreover, most cases deal with numbers in local and/or regional economies, making the 800 positions over the State of California even less significant.  *See eg. Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir.1999) (between 1,000 and 1,500 jobs in the local area is a significant number of jobs); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in San Diego

---

[2] The Court previously rejected Plaintiff's suggestion that the term "region" be defined as a "Metropolitan Statistical Area" in *Gutierrez v. Comm'r*, 2012 WL 259141 (E.D.Cal. 2012).

County and 64,000 jobs nationwide is a significant number of jobs); *DeLorme v. Sullivan,* 924 F.2d 841, 851 (9th Cir. 1991) ("[W]hen vocational experts identify several job categories and thousands of jobs performable in the state by the claimant, we have repeatedly found substantial evidence of performable jobs."); *Barker*, 882 F.3d at 1478-1479 (1266 jobs in the local areas is within the statutory parameters); *De La Cruz v. Astrue,* 2009 WL 1530157, *10 (E.D.Cal. 2009) (2,756 positions in California is a significant number); *Albidrez v. Astrue*, 504 F.Supp.2d 814 (C.D.Cal. 2007) (1445-1700 regional jobs and 17,382-20,450 nationally is a significant number of jobs).

Accordingly, the Court finds that the step five analysis was not supported by substantial evidence and was not free of legal error. *See Underwood v. Astrue*, 2009 WL 498254, *9 (E.D.Cal. 2009) (finding that 500-600 jobs in the State of California was not a significant number). Remand will be discussed at the end of this opinion.

B.   Appeals Council's Decision

Plaintiff next argues that the Appeals Council abused its discretion in deciding that she was not disabled through the date of the ALJ's decision, October 24, 2008, rather than the date of its own decision, January 28, 2011. Plaintiff contends that if the Appeals Council had adjudicated disability through January 28, 2011, Plaintiff's new age category would have resulted in a finding of disability under Rule 201.12.

Plaintiff appears to suggest that the Appeals Council erred not necessarily in adjudicating disability through October 24, 2008, but rather in failing to explain why it took this "unusual" step. Opening Brief, at 15. Plaintiff believes that the Appeals Council determined disability through the date of the ALJ's decision specifically to avoid an otherwise favorable result based on the application of the Grids.

Plaintiff fails, however, to cite support for her argument. While it is true that an ALJ may not disregard the Grids' conclusion of disability, *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989), this principle would not apply to the Appeals Council for a period of time that it is not required to adjudicate.

Once the Appeals Council grants a request for review, it may either make its own decision or remand the case to an ALJ. If the Appeals Council opts to make its own decision, it "may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision." 20 C.F.R. § 416.1479. Here, the Appeals Council adopted the ALJ's factual findings and agreed with the ultimate conclusion of non-disability. It only disagreed with the ALJ's step four decision and therefore made a disability determination at step five. Given the Appeals Council's general agreement, it seems consistent that it would adjudicate disability through the date of the ALJ's decision.

Plaintiff has not provided any authority for her proposition that the Appeals Council must adjudicate through the date of its own decision, or explain its decision not to. In fact, contrary to her suggestions, the Appeals Council would not generally consider evidence related to the period *after* the ALJ's decision. 20 C.F.R. section 1476, entitled, "Procedures before Appeals Council on Review," states:

> (b)(1) In reviewing decisions based on an application for benefits, the Appeals Council will consider the evidence in the administrative law judge hearing record and any new and material evidence only if it relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

20 C.F.R. § 1476(b)(1); *see also* 20 C.F.R. § 1479.

Similarly, HALLEX I-3-8-2, which Plaintiff cites, states only that the Appeals Council's decision "may extend beyond the scope" of the ALJ's decision "if the ALJ did not consider all elements of eligibility or if new material facts come to the Appeals Council's attention." It does not support her position that the Appeals Council must make a determination as to a period of time for which it did not have evidence. The application of *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), to the unadjudicated period does not require a different result.

Plaintiff's claim is without merit and must be denied.

///

///

C.      Testimony of VE

Finally, Plaintiff argues that her ability to "understand, remember and carry out simple one or two step job instructions," as found in the RFC, was not consistent with the reasoning requirements of the positions identified by the VE. Her argument is based on what she sees as a distinction between an ability to perform "simple, routine *tasks*" and an ability to perform "simple one or two step job *instructions*." Opening Brief, at 17 (emphasis added). Plaintiff relies mainly on *Meissl v. Barnhart*, 403 F.Supp.2d 981 (C.D.Cal. 2005).

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE if the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.* However, the failure to ask about a conflict is harmless where there is no conflict, or where "the vocational expert ... provided sufficient support for her conclusion so as to justify any potential conflicts." *Id.*, 486 F.3d at 1154, n. 19.

Here, the positions identified by the ALJ required a reasoning level of 2, which is defined as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Plaintiff contends that her limitation to "simple one or two step job instructions" is inconsistent with a level 2 position. She cites the DOT definition of level 1 reasoning, which requires the ability to "apply commonsense understanding to carry out simple one or two step instructions."

This Court has previously determined that this distinction is without merit. In *Whitaker v. Astrue*, 2010 WL 1444659, *5-6 (E.D.Cal. 2010), the Court rejected Plaintiff's contention that there was a difference between the ability to "carry out one or two step simple job instructions" and an ability to perform "one and two step simple tasks." It explained:

10

Rather than supporting Plaintiff's contention that reasoning level 2 and 3 positions are never available to a claimant with a limitation to simple instructions, these cases stress the importance of employing a VE in cases such as this. In other words, it was precisely because, on the surface, a limitation to simple instructions seems to prevent positions with reasoning levels 2 or 3, that the expertise of a VE was necessary.

Indeed, Plaintiff's citation to *Meissl v. Barnhart*, 403 F.Supp.2d 981 (C.D.Cal.2005), supports this finding and is precisely on point. There, the claimant argued that her limitation to simple, repetitive tasks was inconsistent with her ability to perform the positions identified by the VE that required reasoning levels two or three. The court thoroughly explained the DOT's classification of reasoning levels using a six point scale. "A level two reasoning indicates that the job requires the person to be able to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions,' and '[d]eal with problems involving a few concrete variables in or from standardized situations." *Meissl*, 403 F.3d at 982. The claimant focused on the use of the word "detailed" and sought to equate the DOT's use of "detailed" with the Social Security's use of "detailed instructions." The court found that "such a neat, one-to-one parallel" did not exist. *Meissl*, at 983-984. For example, the DOT uses a "graduated, measured and finely tuned scale," while Social Security separates a claimant's ability to understand and remember into just two categories: "short and simple instructions" and "detailed" or "complex." *Meissl*, at 984. The claimant's position also ignored the qualifier the DOT places on the term "detailed" as also being "uninvolved." *Id*. "While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also ... downplayed the rigorousness of those instructions by labeling them as being 'uninvolved." A reasoning level of two, then, does not conflict with a limitation to simple, repetitive tasks. *Id*. at 984-985.

Plaintiff attempts to distinguish *Meissl* by contending he has a limitation to "simple one and two step instructions," though in *Meissl*, there was no evidence from a medical source that "attempted to quantify the ALJ''s use of the term 'simple' as applied to instructions." Opening Brief, n. 2. The crux of Plaintiff's argument is not entirely clear, though it appears he is again attempting to distinguish between task and instruction. As explained above, that distinction is without merit.

*See also Moua v. Astrue*, 2009 WL 997104 (E.D.Cal.2009); *Angulo v. Astrue*, 2009 WL 817506 (E.D.Cal.2009); *Isaac v. Astrue*, 2008 WL 2875879 (E.D.Cal.2008).

The Court sees no reason to depart from the continued acceptance of *Meissl*. Based on the above, there was no conflict between the VE's testimony and the DOT.

D.      Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original

administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court discussed above the ambiguity in the Appeals Council's step five analysis. This ambiguity, combined with the fact that the VE's numbers appeared to be based on a hypothetical that did not match the RFC and required a two-thirds reduction, requires remand for further proceedings.  AR 54-55.  Plaintiff's RFC is fairly common and it appears unlikely that the actual number of jobs would be as low as the numbers involved here.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Terri Lynn Eckard and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 28, 2012**              **/s/ Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE